# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>  Plaintiff,<br><br>v.<br><br>GARMIN, LTD., GARMIN<br>INTERNATIONAL, INC. AND GARMIN<br>USA, INC.,<br><br>  Defendant. | C.A. No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird Technologies") hereby alleges for its Complaint for Patent Infringement against Garmin, Ltd., Garmin International, Inc. and Garmin USA, Inc., on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

### THE PARTIES

1. Plaintiff Blackbird Technologies is a limited liability company organized under the laws of Delaware, with its principal place of business located at One Boston Place, Suite 2600, Boston, MA 02108.

2. Defendant Garmin, Ltd. is a Swiss corporation having its principal place of business located at Muhlentalstrasse 2, 8200 Schaffhausen, Switzerland.

3. Defendant Garmin International, Inc. is a Kansas corporation with its principal place of business located at 1200 East 151st Street, Olathe, Kansas 66062.

4. Defendant Garmin USA, Inc. is a Kansas corporation with its principal place of business located at 1200 East 151st Street, Olathe, Kansas 66062. Garmin USA, Inc.'s registered agent for process is National Registered Agents, Inc., 160 Greentree Dr. Suite 101, Dover, DE, 19904.

5. Defendants transact substantial business, either directly or through agents, on an ongoing basis in this judicial district and elsewhere in the United States.

6. According to filings with the United States Securities and Exchange Commission, Garmin, Ltd. is the parent corporation of Garmin International, Inc. and Garmin USA, Inc.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the provisions of the Patent Laws of the United States of America, Title 35, United States Code §§ 100, *et seq*.

8. Subject-matter jurisdiction over Blackbird Technologies' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

9. This Court has personal jurisdiction over Defendants because, inter alia, Defendants have established minimum contacts with this forum. Defendants regularly conduct business in the district, including by selling and/or offering to sell products, such as fitness trackers, in the state of Delaware. For example, Defendants use product dealers and distributors in the United States to offer to sell and sell fitness trackers in Delaware, among other states, including garmin.com, amazon.com, Best Buy, Target, and Wal-Mart.

10. Defendants' actions constitute patent infringement in this District in violation of 35 U.S.C. § 271, and Defendants have placed infringing products into the stream of commerce, with the knowledge and understanding that such products are sold and/or offered for sale in this

District. The acts by Defendants have caused injury to Blackbird Technologies within this District.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c) and § 1400(b) and because Defendants transact business within this District and have sold and/or offered for sale in this District products that infringe claims of U.S. Patent No. 6,434,212.

## BACKGROUND

12. Defendants' product line of wearable devices includes the Vivosmart, the Vivosmart HR, the Vivofit, and the Vivofit2.

13. Defendants' use, manufacture, importation, offer for sale, and sales of the Vivosmart, the Vivosmart HR, the Vivofit, and the Vivofit2 infringe one or more claims of the Patent-in-Suit.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,434,212

14. Blackbird Technologies reasserts and incorporates herein by reference the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

15. On August 13, 2002, U.S. Patent No. 6,434,212 (the "212 Patent") entitled "Pedometer," a true and correct copy of which is attached hereto as Exhibit 1, was duly and legally issued by the U.S. Patent and Trademark Office. Blackbird Technologies is the owner by assignment of all right, title, and interest to the 212 Patent, including all right to recover for any and all infringement thereof. The 212 Patent is valid and enforceable.

16. The 212 Patent concerns pedometers and exercise monitoring devices. A pedometer or other exercise monitoring device is not a general purpose computer. At the time of invention, those working in the field knew that it would be useful for pedometers and other

exercise monitoring devices to track various fitness-related activities, such as the distance travelled by a person wearing or otherwise carrying the device while travelling by foot. However, although some exercise monitoring devices known at the time of invention could estimate distance travelled, they utilized many various designs to do so, with highly varying degrees of accuracy.

17. The designs claimed in the 212 Patent represent specific improvements to the exercise monitoring device itself – including, in Claims 2 and 5, a step counter and heart rate monitor joined to a strap used to releasably secure the exercise monitoring device to the user – as well as to the technological processes relied upon by such devices to estimate distance travelled.

18. With respect to foot travel, the length of a person's stride (stride length) generally varies with how many strides the person is taking over a given period of time (stride rate). Moreover, the relationship between stride length and stride rate itself varies from person to person. Improvements claimed in the 212 Patent resulted from the inventor conceiving of specific design configurations for pedometers and other exercise monitoring devices that could effectively utilize these relationships to improve the accuracy of distance calculations by enabling the device to efficiently account for changes in a user's pace during a workout without losing accuracy in distance calculation. For example, pedometers and other exercising monitoring devices claimed in the 212 Patent include data processors, step counters, transmitters, and receivers arranged and programmed in specific ways in order to apply the relationship between stride length and stride rate and to accommodate the varying nature of that relationship across individuals, and ultimately in order to improve accuracy. Pedometers and other exercising monitoring devices claimed in the 212 Patent optionally further include componentry for supporting, performing, and utilizing a calibration function that effectuates the inventor's

recognitions about variations in stride by analyzing input signals and performing calculations based on those signals.

19. Advantages for the user of pedometers embodying the claimed designs include convenience and accuracy. For the manufacturer, such advantages include lower costs of manufacturing.

### Garmin Vivosmart

20. Defendants have infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent, including at least claim 6, by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Vivosmart.

21. The Vivosmart is a pedometer. Exhibit 2 (Garmin web site for Vivosmart) at 1.

22. According to Garmin, for example, the Vivosmart is an "Activity Tracker" that "displays steps, calories, [and] distance." Ex. 2 (Garmin web site for Vivosmart) at 1.

23. The device includes a step counter. Exhibit 2 (Garmin web site for Vivosmart) at 1; Ex. 4 (Vivosmart Owner's Manual) at 3; Ex. 10 (Vivosmart Specs); Ex. 11 (Vivosmart Teardown Ad).

24. The Vivosmart can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 10 (Vivosmart Specs).

25. The receiver is mountable on a user body portion, namely the wrist. The Vivosmart includes a data processor programmed to calculate the distance travelled by the user. Ex. 4 (Vivosmart Owner's Manual) at 5.

26. To calculate distance, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with stride rate. Ex. 4 (Vivosmart Owner's Manual) at 5; Ex. 10 (Vivosmart Specs).

27. The Vivosmart utilizes the Custom Step Length feature for walking and for running. Ex. 3 (Garmin FAQ on Distance Accuracy) at 1; Ex. 4 (Vivosmart Owner's Manual) at 5.

28. This feature allows users to enter distances and number of steps taken to cover those distances separately for walking and running, and "assists with getting the most accurate distance on an activity tracker." Ex. 3 (Garmin FAQ on Distance Accuracy) at 1.

29. Use of the Custom Step Length allows the Vivosmart to "more accurately calculate the distance travelled." Ex. 4 (Vivosmart Owner's Manual) at 5.

30. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

31. As such, at least claim 6 of the 212 Patent reads on the Vivosmart.

### Garmin Vivosmart HR

32. Further, Defendants have infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Vivosmart HR, which is covered by at least claims 2, 5, and 6 of the 212 Patent.

33. The Vivosmart HR is an exercise monitoring device with a strap for releasably securing the device to a user. Ex. 6 (Vivosmart HR Owner's Manual) at 4; Ex. 14 (Vivosmart HR Web Site).

34. Both a step counter and a heart rate monitor are joined to the strap. Ex. 14 (Vivosmart HR Web Site) at 2.

35. Vivosmart HR is an "Smart Activity Tracker with Wrist-based Heart Rate [monitor]" that can display steps and distance. Exhibit 14 (Vivosmart HR Web Site) at 1.

36. The Vivosmart HR includes a data processor programmed to calculate the distance travelled by the user. Ex. 3 (Garmin FAQ on Distance Accuracy) at 1.

37. The Vivosmart HR utilizes the Custom Step Length feature for walking and for running. Exhibit 3 (Garmin FAQ on Distance Accuracy) at 1; Ex. 6 (Vivosmart HR Owners Manual) at 5.

38. The Custom Step Length feature allows users to enter distances and number of steps taken to cover those distances separately for walking and running, and "assists with getting the most accurate distance on an activity tracker." Exhibit 3 (Garmin FAQ on Distance Accuracy) at 1.

39. Thus, the device utilizes a plurality of calibrations as the basis for the determination of stride length as it varies with stride rate whenever a user utilizes this feature.

40. Furthermore, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

41. Use of the Custom Step Length allows the Vivosmart HR to "more accurately calculate the distance travelled." Ex. 6 (Vivosmart Owner's Manual) at 5.

42. The device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with a stride rate.

43. The stride length is determined, at least in certain configurations, with reference to a plurality of calibrations that each calculate a stride length as a function of a known stride rate.

44. Moreover, the Vivosmart HR can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 6 (Vivosmart Owner's Manual) at 2.

45. The receiver is mountable on a user body portion. Ex. 6 (Vivosmart Owner's Manual) at 1.

46. As such, at least claims 2, 5, and 6 of the 212 Patent read on the Vivosmart HR.

Garmin Vivofit

47. Defendants have infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent, including at least claim 6, by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Vivofit.

48. The Vivofit is a pedometer. Ex. 7 (Vivofit Owners Manual) at 2; Ex. 9 (Vivofit Web page).

49. The device includes a step counter. Ex. 7 (Vivofit Owners Manual) at 2; Ex. 12 (Vivofit Teardown) at 2, 5.

50. The Vivofit can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 7 (Vivofit Owners Manual) at 2; Ex 9 (Vivofit web page); Ex. 10 (Vivosmart Specs).

51. The receiver is mountable on a user body portion, namely the wrist. Ex. 7 (Vivofit Owners Manual) at 4.

52. The Vivofit includes a data processor programmed to calculate the distance travelled by the user. Ex. 7 (Vivofit Owner's Manual) at 2.

53. To calculate distance, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with stride rate. Exhibit 3 (Garmin FAQ on Distance Accuracy) at 1; Ex. 7 (Vivofit Owner's Manual) at 2.

54. The Vivofit utilizes the Custom Step Length feature for walking and for running. Ex. 3 (Garmin FAQ on Distance Accuracy) at 1; Ex. 7 (Vivofit Owner's Manual) at 2.

55. This feature allows users to enter distances and number of steps taken to cover those distances separately for walking and running, and "assists with getting the most accurate distance on an activity tracker." Ex. 3 (Garmin FAQ on Distance Accuracy) at 1.

56. Use of the Custom Step Length allows the Vivofit to "more accurately calculate the distance travelled." Ex. 7 (Vivofit Owner's Manual) at 2.

57. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

58. As such, at least claim 6 of the 212 Patent reads on the Vivofit.

### Garmin Vivofit 2

59. Defendants have infringed literally and/or under the doctrine of equivalents one or more of the claims of the 212 Patent, including at least claim 6, by making, using, importing, selling and/or offering to sell, in this judicial district and/or elsewhere in the United States, the Vivofit2.

60. The Vivofit2 is a pedometer. Ex. 8 (Vivofit2 Owner's Manual) at 2; Ex. 13 (Vivofit2 specs).

61. According to Garmin, for example, the Vivofit2 is an "Activity Tracker" with a step counter that can show distance data. Ex. 8 (Vivofit2 Owners Manual) at 2; Ex. 13 (Vivofit specs).

62. The device includes a step counter. Ex. 8 (Vivofit2 Owner's Manual) at 2; Ex. 13 (Vivofit2 Specs).

63. The Vivofit2 can display "steps," therefore it must include a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal as well as a receiver to receive the step count signal transmitted from the transmitter. Ex. 8 (Vivofit2 Owner's Manual) at 2; Ex. 13 (Vivofit2 Specs).

64. The receiver is mountable on a user body portion, namely the wrist. Ex. 8 (Vivofit2 Owner's Manual) at 2.

65. The Vivofit2 includes a data processor programmed to calculate the distance travelled by the user. Ex. 8 (Vivofit2 Owner's Manual) at 3.

66. To calculate distance, the device multiplies the number of steps counted by the step counter by a stride length that varies in accordance with stride rate. Ex. 8 (Vivofit2 Owner's Manual) at 3.

67. The Vivofit2 utilizes the Custom Step Length feature for walking and for running. Exhibit 3 (Garmin FAQ on Distance Accuracy) at 1.

68. This feature allows users to enter distances and number of steps taken to cover those distances separately for walking and running, and "assists with getting the most accurate distance on an activity tracker." Exhibit 3 (Garmin FAQ on Distance Accuracy) at 1.

69. Use of the Custom Step Length allows the Vivofit2 to "more accurately calculate the distance travelled." Ex. 8 (Vivofit2 Owner's Manual) at 3.

70. Thus, the device calculates a distance travelled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and is further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates, at least whenever a user utilizes this feature.

71. As such, at least claim 6 of the 212 Patent reads on the Vivofit 2.

Damages

72. Blackbird Technologies is informed and believes, and on that basis alleges, that Defendants gained profits by virtue of its infringement of the 212 Patent.

73. Blackbird Technologies has sustained damages as a direct and proximate result of Defendants' infringement of the 212 Patent.

74. As a consequence of Defendants' infringement of the 212 Patent, Blackbird Technologies is entitled to recovery of damages in the form of, at a minimum, a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Blackbird Technologies respectfully requests that this Court enter judgment against Defendants, as follows:

A. Adjudging that the 212 Patent is valid and enforceable;

B. Adjudging that Defendants have infringed one or more claims of the 212 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271;

C. An award of damages to be paid by Defendants adequate to compensate Blackbird Technologies for its past infringement and any continuing or future infringement up until the date such judgment is entered, and in no event less than a reasonable royalty, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Blackbird Technologies for Defendants' infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

D. Ordering Defendants to continue to pay royalties to Blackbird Technologies for any continuing or future infringement of the 212 Patent on a going-forward basis;

E. Awarding Blackbird Technologies pre-judgment and post-judgment interest at the maximum rate permitted by law on its damages; and

F. Blackbird Technologies be granted such further relief as this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Blackbird Technologies demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: August 8, 2016 | STAMOULIS & WEINBLATT LLC |
| OF COUNSEL | */s/ Stamatios Stamoulis* |
| | Stamatios Stamoulis #4606 |
| Christopher Freeman |   stamoulis@swdelaw.com |
| cfreeman@blackbird-tech.com | Richard C. Weinblatt #5080 |
| Wendy Verlander |   weinblatt@swdelaw.com |
| wverlander@blackbird-tech.com | Two Fox Point Centre |
| Deborah Yates | 6 Denny Road, Suite 307 |
| dyates@blackbird-tech.com | Wilmington, DE 19809 |
| Blackbird Tech LLC d/b/a | Telephone: (302) 999-1540 |
| Blackbird Technologies | |
| One Boston Place, Suite 2600 | *Attorneys for Plaintiff* |
| Boston, MA 02108 | *Blackbird Tech LLC* |
| 617.307.7100 | *d/b/a Blackbird Technologies* |